UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| JEFFREY MARTIN SCHULMAN, | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 2:12-cv-01494-RCJ-GWF |
| WYNN LAS VEGAS, LLC et al., | ) ) | **ORDER** |
| Defendants. | ) ) ) | |

This case arises out of alleged employment discrimination on the basis of Plaintiff's diabetes. Pending before the Court is Defendants' motion to dismiss. For the reasons given herein, the Court grants the motion.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff Jeffrey Schulman is an employee at Wynn Las Vegas Hotel and Casino ("Wynn"). (Compl. ¶ 1, Aug. 22, 2012, ECF No. 1). He began work with Wynn on or about November 14, 2008 as a night shift security officer, at which time he disclosed to Wynn his type I diabetes. (*Id.* 10). Schulman's diabetes requires him occasionally to check his blood sugar and eat, and he applied for a day shift position because of unspecified difficulties with managing his diabetes during the night shift. (*See id.* ¶¶ 12–13). Schulman gave a doctor's note to his supervisor, Jeff Jackson (who forwarded the note to Assistant Director of Security Tony Wilmont), indicating that a day shift would assist in managing his diabetes in an unspecified

1  way. (*See id.* ¶¶ 16–18). Schulman identifies the transfer to a day shift as the "reasonable
2  accommodation" for his diabetes he requested under the Americans with Disabilities Act
3  ("ADA"). (*See id.* ¶ 17). Although Jackson told Schulman he was ninth on the list for transfer to
4  the day shift, and although Employee Relations employee Lucy Vitaro and Executive Director of
5  Security Marty Lethitien told Schulman at a December 1, 2009 meeting that he would be
6  transferred to the day shift in January 2010, he was never transferred to the day shift. (*See id.*
7  ¶¶ 14–15, 20–21). On November 23, 2009, Wynn had disciplined Schulman for falling asleep on
8  the job. (*Id.* ¶ 23). This may have been what led to the December 1, 2009 meeting.  Wynn
9  disciplined Schulman again for falling asleep on the job on February 14, 2010. (*Id.*).  Schulman
10 alleges that his blood sugar was 439 (either before or after he fell asleep on February 14, 2010),
11 but Jackson refused to believe his diabetes was the cause. (*See id.*).  Eventually, Wynn suspended
12 Schulman without pay, pending an investigation. (*Id.* ¶ 27).  After a month, Wynn informed
13 Schulman that he would not be permitted to return as a security officer, but that he could apply
14 for other positions. (*Id.* ¶¶ 28–29).

15     After Schulman filed a charge of discrimination, Wynn rehired him as an "assistant shift
16 manager for public areas," which position did not provide as many opportunities for overtime as
17 the position of security officer did, although the hourly pay was not lower. (*See id.* ¶ 34).  The
18 position was again for the night shift, and Wynn refused his request to be placed on the day shift.
19 (*Id.* ¶¶ 35). After three months, Schulman experienced low blood sugar of 38, which led Wynn
20 to suspend him for one week; Schulman does not allege the actual cause of the suspension, but
21 presumably he fell asleep or had to leave his post. (*See id.* ¶ 36).  Wynn told Schulman he would
22 have to sign a "release" to return to his position, but he refused. (*Id.* ¶ 37).  Wynn then provided
23 Schulman a position in retail, making less money. (*Id.* ¶ 38).
24     Schulman filed a charge of discrimination with the Equal Employment Opportunity
25 Commission ("EEOC"). After the EEOC rejected the charge, Schulman sued three Wynn

entities in the Court on four causes of action under the ADA: (1) discrimination; (2) requirement of a pre-employment medical examination; (3) failure to accommodate; and (4) implementation of impermissible standards, criteria, and methods of administration. Defendants have moved to dismiss for failure to file suit within ninety days of receiving the right-to-sue letter.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the factual grounds upon which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In other words, under the modern interpretation of Rule

8(a), a plaintiff must not only specify a cognizable legal theory (*Conley* review), but also must plead the facts of his own case so that the court can determine whether the plaintiff has any plausible basis for relief under the legal theory he has specified, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

III.   ANALYSIS

Wynn argues that Schulman failed to sue within ninety days of receiving his right-to-sue letter ("RTS"). *See* 42 U.S.C. § 2000e-5(f)(1). Schulman filed the present lawsuit on August 22, 2012, ninety days after May 24, 2012. The RTS letter form the EEOC is dated May 18, 2012. The limitations period begins to run on the date the claimant receives the letter at his address of record. *Payan v. Aramark Mgmt. Servs., Ltd.*, 495 F.3d 1119, 1122 (9th Cir. 2007). Where the date is unknown, there is a rebuttable presumption the letter was mailed on the date it was issued and that it was received three days later. *Id.* at 1123. In this case, the presumption is therefore

1  that Schulman received the RTS on May 21, 2012, making the Complaint untimely.  Wynn's
2  counsel, which represented Wynn before the EEOC, received a copy of the RTS at its Las Vegas
3  address on May 21, 2012. (*See* Abbott Aff. ¶ 4, Sept. 14, 2012, ECF No. 10-1, at 7).

4  In response, Schulman attempts to rebut the three-day presumption.  He attests that he
5  received the RTS on May 24, 2012. (*See* Schulman Aff. ¶ 2, Oct. 1, 2012, ECF No. 13, Ex. 1).
6  He attests as to having written down the date of receipt at the time of receipt because the letter
7  was not sent certified. (*See id.* ¶ 3).  Schulman also attaches the affidavit of Cary Schulman, his
8  pro hac vice attorney, but that affiant only attests that Schulman contacted him when Schulman
9  received the RTS and that Schulman alleged to have made a record of it; he does not attest as to
10 direct knowledge of the date of receipt. (*See* Cary Schulman Aff. ¶ 3, Oct. 1, 2012, ECF No. 13,
11 Ex. 2).

12 In reply, Defendants argue that Schulman has not rebutted the three-day presumption
13 because his only evidence is his own self-serving affidavit and his suspicious alleged notation
14 upon receipt, neither of which were alleged in his Complaint but only after Defendants moved to
15 dismiss for failure to file suit within ninety days.  Defendants adduce proof that the EEOC's
16 letter to Defendants' counsel at their Las Vegas address was both dated and postmarked May 18,
17 2012. (*See* Mot. Dismiss Ex. 1, ECF No. 10-1).  Schulman's copy of the RTS letter received at
18 his Las Vegas address, which he adduces, is also dated May 18, 2012. (*See* Resp. Ex. 1-A, ECF
19 No. 13).  This is sufficient evidence for Defendants to support the presumption that the letter
20 Schulman admits he received was mailed on May 18, 2012, the date the letter was issued. *See*
21 *Payan*, 495 F.3d at 1123.  Schulman provides no evidence that the copy of the letter he received
22 was postmarked on a different date. (*See id.*).  Although not all postal carriers are equally
23 efficient, Plaintiff must provide more than his own self-interested affidavit to support an
24 anomalous three-day difference in delivery to addresses in the same city.  In this case, May 21,
25 2012 was a Monday, and the 24th was a Thursday.  The possible three-day difference in delivery

is very unlikely under these circumstances, as opposed to a situation where two of the three days could be accounted for by a weekend, meaning a difference of only one postal service working day. Unlike in cases where the three-day presumption has been rebutted, Plaintiff has provided no corroborating evidence of poor or inconsistent mail service at his residence, *see Coleman v. Potomac Elec. Power Co.*, 310 F. Supp. 2d 154, 157–58 (D.D.C. 2004), or that the date on his copy of the EEOC's letter was different than that on Defendant's copy, *see, e.g.*, *Roberts v. Nevada ex rel. Dep't of Conservation & Natural Res., Div. of State Parks*, No. 3:05-cv-00459-RAM, 2008 WL 3925084, at *7 (D. Nev. Aug. 20, 2008). The self-interested affidavit and note are insufficient to rebut the presumption:

> Here, Payan has offered insufficient evidence to rebut the three-day presumption. Although Payan suggested that "[the notice letter] could have been delayed" and that "[she'd] gotten mail that'[d] been delayed before ... [s]ometimes about a week," none of these comments are sufficiently definite, without corroborating evidence, to conclude that the right-to-sue letter arrived more than three days after issuance by the EEOC. Payan also suggested that "[m]any reasonable and logical reasons exist [ ] why ... the EEOC may not have mailed the right-to-sue notice until [after] September 29." However, Payan's unsupported conjectures are insufficient to suggest delayed receipt. *Accord Cook v. Providence Hosp.*, 820 F.2d 176, 178-179 & n. 3 (6th Cir. 1987) ("[The petitioner's] denials are not sufficient to support a reasonable conclusion that the letter was not received.").

*Payan*, 495 F.3d 1126–27. In summary, Schulman has not rebutted the presumption that he received the RTS on May 21, 2012. The limitation period therefore ran on August 19, 2012, three days before Plaintiff filed suit, and the Complaint is untimely.

///

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 10) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 19th day of October, 2012.

_____
ROBERT C. JONES
United States District Judge